STATE OF MINNESOTA

IN SUPREME COURT

A25-0225

Workers' Compensation Court of Appeals                                    Thissen, J.

Paula Kay Brunner,

                Respondent,

vs.                                                                                    Filed: August 6, 2025
                                                                                       Office of Appellate Courts
Post Consumer Brands and
Gallagher Bassett Services, Inc.

                Relators.

_____

David C. Wulff, Law Office of David C. Wulff, New Brighton, Minnesota, for respondent.

Christine L. Tuft, Erica A. Weber, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for relators.

Joshua W. Laabs, Schmidt & Salita Law Team, Minnetonka, Minnesota, for amicus curiae Minnesota Association for Justice.

Timothy P. Jung, Lind Jensen Sullivan & Peterson, Minneapolis, Minnesota; and

Matthew L. Bonniwell, Erstad & Riemer, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

S Y L L A B U S

    1.    An employee may bring a direct claim under the Workers' Compensation

Act, Minn. Stat. ch. 176 (2024), for medical expenses related to a compensable work injury

1

that the employee's health insurer covered before a determination was made that the injury is compensable.

2. The Workers' Compensation Court of Appeals erred by reversing the compensation judge's order under Minn. Stat. § 176.361 (2024), extinguishing the health insurer's potential intervenor interest after it failed to timely intervene.

Affirmed in part; reversed in part.

O P I N I O N

THISSEN, Justice.

We must decide whether an employee may raise a direct claim for medical expenses related to a compensable injury under the Workers' Compensation Act (the Act), Minn. Stat. ch. 176 (2024), that the employee's health insurer paid while her workers' compensation claim was pending. This case presents an issue that is very similar to the question we resolved in our recent decision in *Johnson v. Concrete Treatments, Inc.*, 7 N.W.3d 119 (Minn. 2024). Consistent with our holding in *Johnson*, 7 N.W.3d at 130, we hold that an injured employee may bring a direct claim for medical expenses under the Act related to a compensable work injury that their insurer paid before the injury was found compensable. We must also determine whether the Workers' Compensation Court of Appeals (WCCA) erred by reversing a compensation judge's order extinguishing a health insurer's intervenor interest in workers' compensation proceedings. We hold that the

2

WCCA erred in this respect because, in this case, the insurer did not timely intervene in the proceedings as required by Minn. Stat. § 176.361, subd. 2.

## FACTS

Paula Brunner began working for relator Post Consumer Brands in April 2003. During her employment, she worked as a packaging operator on the assembly line. In January 2022, Brunner began complaining to the company nurse about pain in her left shoulder and a limited range of motion. She requested that Post Consumer Brands cover her medical expenses because the shoulder injury was work related. Brunner saw orthopedist Dr. Hans Bengtson for her shoulder condition and eventually had shoulder surgery in February 2023. Following the surgery, Brunner was placed on leave and received disability benefits until she returned to work in her pre-injury capacity in November 2023.

Post Consumer Brands and its workers' compensation insurer, relator Gallagher Bassett Services,[1] initially admitted that Brunner's shoulder condition was work related. Post Consumer Brands subsequently engaged Dr. Michael D'Amato to perform an independent medical exam on Brunner's left shoulder. Dr. D'Amato concluded that there was no reasonable basis to support a claim of work-related injury as a contributing factor to Brunner's shoulder condition. After receiving Dr. D'Amato's report, Post Consumer Brands denied Brunner's claim, asserting that her shoulder condition was not work related. Following that determination, and in conformance with the directive in Minnesota Statutes

---

[1]    We will refer to Post Consumer Brands and Gallagher Basset Services collectively as Post Consumer Brands unless we are referring solely to Gallagher Bassett Services.

section 176.191, subdivision 3, Brunner's health insurer, Healthy Alliance Life Insurance Company d/b/a Anthem Blue Cross Blue Shield (Anthem), reimbursed Brunner's medical providers for treating and performing surgery on Brunner's shoulder. *See* Minn. Stat. § 176.191, subd. 3 ("If a dispute exists as to whether an employee's injury is compensable . . . and the employee is otherwise covered by an insurer or entity . . . that insurer or entity shall pay any medical costs incurred by the employee for the injury up to the limits of the applicable coverage . . . .").

In response to Post Consumer Brands' decision to deny her claim as not work related, Brunner filed a workers' compensation claim petition seeking, among other things, a determination that her shoulder injury was work related and compensable under the Act. Brunner notified Anthem of its right to intervene in the workers' compensation proceedings. Despite receiving timely notice, Anthem did not file a timely motion to intervene in the proceedings. Anthem did, however, respond to Brunner's notice of its right to intervention, stating that it would "expect reimbursement of [Anthem's] interest in the event of either a favorable decision at hearing or if settlement is reached through a compromise agreement."

Brunner submitted a report prepared by Dr. Bengtson challenging Dr. D'Amato's report to the compensation judge. Dr. Bengston concluded that Brunner's work activities caused her shoulder condition. After a hearing, the compensation judge issued an order finding that Dr. Bengtson's opinions were more credible than Dr. D'Amato's and that the medical expenses Brunner incurred as a result of her shoulder injury were compensable under the Act.

Despite finding that Brunner's injury resulted from work activities, the compensation judge determined that Brunner could not bring a direct claim for medical bills Anthem paid. The compensation judge reasoned that "[a]ll case authority for the employee having a direct claim for medical expenses is derivative of Minn. Stat. [§] 176.135 (2022) and refers to medical 'providers.' A health insurer is not a medical provider."[2] The compensation judge construed Brunner's claim for medical bills as a claim on behalf of Anthem seeking reimbursement for paying Brunner's medical bills under the health insurance policy between Brunner and Anthem. For this reason, the compensation judge determined that, under Minnesota Statutes section 176.361—which provides for extinguishment of the intervenor interests of a potential intervenor who fails to timely intervene[3]—Anthem's failure to intervene in the workers' compensation proceeding

---

[2]    Section 176.135 requires an employer to "furnish any medical . . . treatment . . . as may reasonably be required at the time of the [employee's] injury and any time thereafter to cure and relieve from the effects of the injury." Minn. Stat. § 176.135, subd. 1. This is the substantive provision of the Act that allows employees to obtain medical benefits for workplace injuries. *See Leuthard v. Indep. Sch. Dist. 912*, 958 N.W.2d 640 (Minn. 2021) (referring to section 176.135 as the "medical benefits statute").

[3]    Section 176.361, subdivision 2, provides in relevant part:

> Subd. 2. Written motion. A person desiring to intervene in a workers' compensation case as a party, including but not limited to a health care provider who has rendered services to an employee or an insurer who has paid benefits under section 176.191, shall submit a timely written motion to intervene to the commissioner, the office, or to the court of appeals, whichever is applicable.
> (a) . . . A motion to intervene must be served and filed within 60 days after a potential intervenor has been served with notice of a right to intervene or within 30 days of notice of an administrative conference or expedited hearing. . . . Where a motion to intervene is not timely filed under this

extinguished Anthem's claim for reimbursement and, by extension, Brunner's claim on Anthem's behalf.

The WCCA reversed the compensation judge's finding that Brunner could not bring a direct claim on Anthem's behalf. *Brunner v. Post Consumer Brands*, No. WC24-6569, 2025 WL 271362, at *4 (Minn. WCCA Jan. 15, 2025). The WCCA relied on Minnesota Statutes section 176.191, subdivision 3:

> If a dispute exists as to whether an employee's injury is compensable under this chapter and the employee is otherwise covered by an insurer or entity pursuant to chapters 62A, 62C, 62D, 62E, 62R, and 62T, that insurer or entity shall pay any medical costs incurred by the employee for the injury up to the limits of the applicable coverage and shall make any disability payments otherwise payable by that insurer or entity in the absence of or in addition to workers' compensation liability. If the injury is subsequently determined to be compensable pursuant to this chapter, *the workers' compensation insurer shall be ordered to reimburse the insurer* or entity that made the payments for all payments made under this subdivision by the insurer or entity, including interest at a rate of 12 percent a year.

(Emphasis added). The WCCA determined that a conflict exists between sections 176.191, subdivision 3, and 176.361, subdivision 2. *Brunner*, 2015 WL 2327967, at *3–4. In resolving the conflict, the WCCA concluded that section 176.191, subdivision 3, controls, and thus the compensation judge erred by extinguishing Anthem's intervenor interest in the proceeding. *Brunner*, 2015 WL 2327967, at *3–4. The WCCA ordered Post Consumer Brands to "reimburse Anthem for all payments made to cure and relieve the employee's

---

section, the potential intervenor may not collect, or attempt to collect, the extinguished interest from the employee, employer, insurer, or any government program.

left shoulder condition arising out of the work injury culminating on January 11, 2022, including payment of interest at a rate of 12 percent a year." *Id.* at *4.

Post Consumer Brands petitioned this court for a writ of certiorari, asking us to reverse the WCCA's determinations that (1) Brunner may raise a direct claim for reimbursement for expenses paid for by Anthem, and (2) the compensation judge erred by extinguishing Anthem's intervenor interest in the proceedings under section 176.361.[4]

## ANALYSIS

In this opinion, we answer two questions. First, we consider whether an employee may bring a direct claim for medical expenses related to a compensable work injury already paid by the employee's health insurer during the pendency of the compensation proceedings, notwithstanding the health insurer's failure to intervene in the workers' compensation proceedings. Second, we address whether the WCCA erred by reversing the compensation judge's order extinguishing Anthem's intervenor interest in the

---

[4] At the hearing before the compensation judge, Brunner's counsel alleged that the Anthem insurance plan is a plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), a federal law governing health insurance plans in private industry. 29 U.S.C. §§ 1001–1461. ERISA permits an insurer to bring a federal claim against a plan beneficiary if the insurer has paid expenses for an injury for which the beneficiary later receives workers' compensation benefits. *See* 29 U.S.C. § 1132(a)(3). Post Consumer Brands' attorney correctly stated that "there is nothing in the record that says [the Anthem insurance plan is] an ERISA plan." After we issued the writ of certiorari, Brunner moved to supplement the record. Brunner seeks to add into the record Post Consumer Brands' response to a demand for discovery—dated after the hearing before the compensation judge and the compensation judge's order—confirming that the Anthem insurance plan *is* an ERISA plan. Post Consumer Brands opposes the motion as improperly filed with this court and not compliant with Minn. R. Civ. App. P. 110.05. Because determining whether the plan is governed by ERISA is unnecessary to our decision, we deny the motion to supplement the record.

7

compensation proceedings under Minnesota Statutes section 176.361. These are both questions of law that require us to interpret the Act, and thus we review each question de novo. *Johnson*, 7 N.W.3d at 126.

## I.

Our decision in *Johnson* resolves the first question. In that case, Johnson suffered a work-related injury and sought treatment. *Id.* at 122–23. He filed a workers' compensation claim petition asserting that his employer was responsible for the cost of medical treatment. *Id.* at 123. At the time, bills from two of Johnson's medical providers remained unpaid. *Id.* at 124. Johnson notified the providers of the claim petition and their right to intervene in the proceeding under section 176.361, but the providers did not intervene. *Johnson*, 7 N.W.3d at 123. Johnson asserted a direct claim for payment of his medical expenses under the Act. *Id.* at 124. Johnson's employer asserted that Johnson could not bring a direct claim for the medical expenses because the medical providers who provided the services could have intervened under section 176.361 but did not. *Johnson*, 7 N.W.3d at 124–25.

We rejected the employer's argument. *Id.* at 130. We recognized that "[t]he Workers' Compensation Act . . . gives an injured employee the right to seek payment from the employer for the costs of medical treatment that is reasonably required to cure or relieve the effects of an injury arising out of and in the course of employment." *Id.* at 125. We then turned to the plain language of section 176.361, governing intervention, and concluded that "[n]othing in the language of section 176.361 impairs the right of the employee to seek direct payment of medical expenses." *Johnson*, 7 N.W.3d at 127. We

reasoned that the right at issue under section 176.361 is the "*procedural* right to intervene in the workers' compensation matter" and not "the employee's freestanding *substantive* right to have their qualifying medical expenses paid by their employer." *Johnson*, 7 N.W.3d at 128. In other words, the extinguishment language in section 176.361 is narrowly focused on preventing a party who has a claim under the Act[5] from making that claim in the workers' compensation proceeding unless the party intervenes in a timely manner. *Johnson*, 7 N.W.3d at 127 & n.5. Accordingly, we held that "the plain language of section 176.361 does not limit an employee's right to seek direct payment of medical expenses, even when a medical provider has failed to intervene to assert a claim in accordance with the statute." *Johnson*, 7 N.W.3d at 127. Rather, "even if a medical provider itself is barred from bringing a claim for medical expenses because it sought to intervene after the statutory deadline [or did not intervene at all], the employee's right to assert a direct claim for those medical expenses endures." *Id.* at 130.

As in *Johnson*, Brunner seeks payment from her employer and its workers' compensation insurer for the costs of medical treatment that was reasonably required to cure or relieve the effects of her shoulder injury. On appeal, the employer and workers' compensation insurer do not contest that the shoulder injury arose out of and in the course of Brunner's employment. But, like the employer in *Johnson*, they argue that a third-party's failure to intervene in the workers' compensation proceeding extinguishes

---

[5] In *Johnson*, we recognized that the Act "also gives medical providers who treat injured employees for work-related injuries the right to assert their own claim[s] for reimbursement directly from the employer." 7 N.W.3d at 126.

9

Brunner's right to make a direct claim seeking payment for the costs of medical treatment from them. We hold, in accordance with *Johnson*, that Brunner is entitled to seek and recover direct payment for those medical expenses from her employer and its workers' compensation insurer. Anthem's failure to intervene in Brunner's workers' compensation proceeding to assert an independent claim related to Brunner's medical expenses does not extinguish Brunner's "freestanding substantive right" to have her employer and its workers' compensation insurer pay those medical expenses. *Id.* at 128 (emphasis omitted).

Post Consumer Brands attempts to distinguish *Johnson* and urges us to reach a different result in this case. It observes that *Johnson* concerned the failure of a medical provider (as opposed to a health insurer) to intervene and notes that, unlike *Johnson*, Anthem had already paid the medical providers in this case and Brunner herself owes her providers no money. Because of those factual differences, Post Consumer Brands argues that the rule we announced in *Johnson* does not apply. We do not find this argument persuasive.

First, the language of section 176.361 does not support Post Consumer Brands' argument that Anthem's status as a health insurer matters to the outcome of this case. *See In re Est. of Ecklund*, 20 N.W.3d 351, 355 (Minn. 2025) (stating that when interpreting a statute, "[w]e begin with the plain language, and, if there is only one reasonable interpretation of that language, we adopt that meaning"). Section 176.361, subdivision 1, grants the right to intervene to "[a] person" who has an interest in a workers' compensation proceeding "such that the person may either gain or lose by an order or decision." Section 176.361, subdivision 2, sets procedural time limits by which a person must submit

10

a motion to intervene and provides that the "potential intervenor interest" is extinguished if the time limitations are not met. Notably, in section 176.361, subdivision 2, the Legislature provided *two* non-exclusive examples of persons who may intervene: a *health care provider* who has rendered services to the employee (*Johnson*) and *an insurer* who has paid for those medical services pending resolution of the workers' compensation claim (this case). Nowhere in the statute did the Legislature differentiate between medical providers and health insurers in the way Post Consumer Brands suggests.

Second, the conclusion that the Legislature did not intend to differentiate between medical providers and health insurers as Post Consumer Brands urges is consistent with our reasoning in *Johnson*. The fundamental premise of that decision is that an employee's "*freestanding* substantive right to have their qualifying medical expenses paid by their employer" is distinct from, and undiminished by, others' failure to intervene in a timely fashion to assert independent claims against the employer. *Johnson*, 7 N.W.3d at 128 (original emphasis omitted; new emphasis added). This is consistent with the Act's aim of employers paying employee medical expenses that result from injuries arising out of and in the course of employment. *See* Minn. Stat. § 176.001 ("It is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost . . . ."). Post Consumer Brands makes no claim that, had Anthem timely intervened, Post Consumer Brands would not have an obligation to cover Brunner's medical expenses for her work-related shoulder injury.

11

Third, we conclude that it makes no difference in our analysis that in *Johnson* the medical providers had not yet been paid when the employee asserted his direct claim, while Brunner's medical providers have been paid. *See Johnson*, 7 N.W.3d at 124. As an initial matter, nothing in the language of section 176.135 or 176.361 distinguishes between paid and unpaid expenses. More importantly, an employee's direct claim for medical expenses is founded on the principle that, when an employee is injured at work, the employer is responsible for medical treatment related to that injury. Minn. Stat. § 176.135, subd. 1 (requiring employers to "furnish any medical, psychological, chiropractic, podiatric, surgical and hospital treatment . . . as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury"). The employer's obligation under the Act does not disappear because some other party—a health insurer or the employee—has paid the medical providers pending resolution of the workers' compensation proceeding. Again, the employee's freestanding direct right to recover the costs of medical treatment from the employer is independent of other claims.[6]

Post Consumer Brands also suggests that section 176.191, subdivision 3, which involves insurer payment, eliminates an employer's general obligation to pay for the

---

[6]     The compensation judge determined that Brunner could not make a direct claim for the medical expenses Anthem covered. He reasoned that although some existing case law recognizes an employee's ability to raise a direct claim for medical expenses under section 176.135, those cases refer only to "providers" and never mention health insurers. Accordingly, the compensation judge determined that, once a health insurer has paid an employee's medical expenses incurred as a result of a work injury, the employer's obligation under the Act to cover the cost of the medical treatment disappears and the employee may make no direct claim for those medical expenses. We disagree with that reading of the statute and the case law interpreting it. Section 176.135 imposes an

12

medical expenses an employee incurs because of a work injury. That argument misreads the statute.

As noted above, section 176.191, subdivision 3, provides:

> If a dispute exists as to whether an employee's injury is compensable under this chapter and the employee is otherwise covered by an insurer or entity pursuant to chapters 62A, 62C, 62D, 62E, 62R, and 62T, that insurer or entity shall pay any medical costs incurred by the employee for the injury up to the limits of the applicable coverage and shall make any disability payments otherwise payable by that insurer or entity in the absence of or in addition to workers' compensation liability. If the injury is subsequently determined to be compensable pursuant to this chapter, the workers' compensation insurer shall be ordered to reimburse the insurer or entity that made the payments for all payments made under this subdivision by the insurer or entity, including interest at a rate of 12 percent a year.

Nothing in this language supports Post Consumer Brands' position that the provision relieves an employer of its obligation to compensate an employee when the employee has a health insurance policy. Rather, section 176.191, subdivision 3, functions to protect employees and treating medical providers when an employer contests whether a claim is compensable. It does so by requiring that an employee's health insurer pay for medical treatment notwithstanding any provision in a health insurance policy exempting from coverage any treatment for work-related injuries covered by workers' compensation. But the statutory language expressly contemplates that the employer and its workers' compensation insurer (and not the health insurer) have an obligation to pay for those

---

obligation on *employers* to "furnish any medical, psychological, chiropractic, podiatric, surgical and hospital treatment . . . as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury." Minn. Stat. § 176.135, subd. 1. That obligation does not turn on whether the employee still owes money to the medical providers who provided treatment.

13

medical expenses if the injury is found to be a compensable work injury. In other words, the workers' compensation insurer's obligation to reimburse a health care insurer flows from the employer's (and its workers' compensation insurer's) more general obligation to the employee to cover medical expenses incurred from a work injury. Post Consumer Brands' argument flips that relationship on its head.

Post Consumer Brands also asserts that Anthem's failure to intervene bars Brunner from making a direct claim for the medical expenses she incurred because section 176.361, subdivision 2, regarding intervention, specifically identifies a health insurer "who has paid benefits under section 176.191" as a potential intervenor. Post Consumer Brands argues that this language indicates that the Legislature understood section 176.191, subdivision 3—which includes the obligation that if an injury is deemed compensable, the workers' compensation insurer must be ordered to reimburse the health insurer—to create an interest giving rise to a right to intervene. It follows, according to Post Consumer Brands, that a health insurer's failure to intervene in a timely manner means that the health insurer may not demand reimbursement for amounts it paid to the employee's medical providers. Consequently, according to Post Consumer Brands, because Brunner's health insurer has no right to reimbursement for amounts paid under the legal obligations created in section 176.191, subdivision 3, Brunner should also be precluded from recovering those amounts.

Again, we disagree. The final link in this chain of reasoning runs afoul of our conclusion in *Johnson* that an employee has a right to bring a direct claim to recover medical expenses incurred as a result of a work injury notwithstanding another party's

14

failure to timely intervene. *Johnson*, 7 N.W.3d at 128. Indeed, section 176.361, subdivision 2—the basis for Post Consumer Brands' argument—specifically refers to both a health insurer (as is the case here) and "a health care provider who has rendered services to an employee" (as was the case in *Johnson*) as potential intervenors. If the reference to a health insurer compels the result that Post Consumer Brands claims—that a health insurer's failure to intervene means that an employee cannot directly recover—then the reference to a provider should compel the same result when a provider fails to intervene. This conclusion is wholly inconsistent with our holding in *Johnson*. In short, Post Consumer Brands' reliance on the reference to a health care insurer in section 176.361, subdivision 2, does not distinguish this case from *Johnson*.

In summary, we hold that the rule we announced in *Johnson*, 7 N.W.3d at 130—that an employee may bring a direct claim against their employer for medical expenses incurred as a result of a compensable work injury notwithstanding that a person with a potential intervenor interest did not timely intervene in the workers' compensation proceeding—applies when the potential intervenor is a health insurer who paid medical expenses on behalf of the employee pending resolution of the workers' compensation proceedings.

## II.

We now turn to the question of whether the WCCA erred in determining that Anthem's "potential intervenor interest" in the compensation proceedings was not extinguished even though Anthem did not intervene in the proceeding as required under section 176.361, subdivision 2. We conclude the WCCA erred. As we discussed in

15

*Johnson*, a "potential intervenor interest" is the "*procedural* right to intervene in the workers' compensation matter." 7 N.W.3d at 128. Anthem's failure to intervene extinguished its right to pursue in the workers' compensation proceeding an independent claim to recover the amounts it paid for Brunner's medical injuries related to her shoulder injury.

That conclusion does not mean, however, that Post Consumer Brands may avoid its obligation to pay for the medical expenses Brunner incurred to treat her shoulder injury. As discussed in Part I, Brunner may bring a direct claim against Post Consumer Brands for medical expenses. Further, the statute mandates that, once an injury is deemed compensable under the Act, "the workers' compensation insurer shall be ordered to reimburse the insurer or entity that made the payments for all payments made under this subdivision by the insurer or entity, including interest at a rate of 12 percent a year." Minn. Stat. § 176.191, subd. 3. Thus here, because Brunner prevailed in establishing that her injury is compensable under the Act and submitted evidence of the amounts Anthem paid her medical providers, Gallagher Bassett Services must reimburse Anthem for all payments that it, as the health insurer, made under this subdivision, including interest at a rate of 12 percent a year in accordance with section 176.191, subdivision 3.[7]

We disagree with Post Consumer Brands' contention that our decision in this case renders the intervention requirements in section 176.361 "essentially meaningless." As we

---

[7] The WCCA determined that Anthem's failure to intervene did not extinguish Anthem's potential intervenor interest. It reasoned that the directive in section 176.191—that the compensation judge shall order Post Consumer Brands to

16

stated in *Johnson*, the purpose of the extinguishment language in section 176.361, subdivision 2(a), was "to avoid tardy intervention—a purpose that is achieved by preventing potential intervenors from joining the proceeding after the statutory deadline." 7 N.W.3d at 127 n.5. Section 176.361 continues to serve that important purpose. A potential intervenor who fails to meet the deadline may not, for example, present evidence in support of a claim at or before the compensation hearing or participate in the compensation proceedings through an attorney. Minn. Stat. § 176.361, subds. 1, 6.

It is true that a health insurer that fails to intervene runs the risk, for example, that an employee will not present evidence of how much the health insurer has paid medical providers, making it difficult to determine the amount the workers' compensation insurer owes to reimburse the health insurer.[8] In this case, however, because that information was

_____

reimburse Anthem for all medical bills it paid on Brunner's behalf pending resolution of Post Consumer Brands' obligation to cover the medical costs of treating Brunner's injury—irreconcilably conflicted with the extinguishment provision in section 176.361, subdivision 2(a). Applying the statutory order of operations rules for resolving an irreconcilable conflict between two statutes, Minn. Stat. § 645.26 (2024), the WCCA concluded that the extinguishment provision in section 176.361, subdivision 2(a), was inoperative under the circumstances of this case. We do not need to reach the questions of whether an irreconcilable conflict exists or how to resolve the conflict because the answer to that question does not affect our resolution of the case. As we discussed in Part I, the fact that Anthem's right to intervene and directly assert its claim to recover the amounts it paid to Brunner's medical providers from Post Consumer Brands is extinguished does not eliminate Brunner's right to bring a direct claim for those same medical expenses. And here—where Brunner prevailed on the issue of her injury being compensable under the Act and also submitted evidence as to the amounts Anthem paid her medical providers—Post Consumer Brands must reimburse Anthem for all payments it made under section 176.191, subdivision 3, including interest at a rate of 12 percent a year.

[8] An insurer may be willing to run that risk. Brunner points out that, under the terms of her policy with Anthem and federal law, 29 U.S.C. § 1132(a)(3), Anthem may bring a subrogation claim against Brunner for any amounts (up to the amount Anthem paid to

available to the compensation judge, we conclude that the compensation judge must follow the mandate set forth in section 176.191, subdivision 3, and order Gallagher Bassett Services to reimburse Anthem for all payments the insurer or entity made under this subdivision, including interest at a rate of 12 percent a year.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the WCCA. We affirm the WCCA to the extent that it held that Brunner may raise a direct claim for medical expenses Anthem paid before the compensation judge determined her injury was compensable. We reverse the WCCA to the extent that it held that the compensation judge erred by extinguishing Anthem's intervenor interest in the compensation proceedings and thus reinstate Order 4 of the compensation judge's Findings and Order. We further order that in accordance with these holdings, Gallagher Bassett Services must reimburse Anthem for the amount it paid Brunner's providers in accordance with section 176.191, subdivision 3.

Affirmed in part; reversed in part.

---

Brunner's health care providers) that Brunner recovered for those medical expenses in the workers' compensation proceeding. We have never held that a health insurer's subrogation claim against its insured brought under state law (independent of the Act) is extinguished under section 176.361, subdivision 2(a). We need not decide that issue today.